OPINION
{¶ 1} This appeal emanates from a judgment entered by the Ashtabula County Court of Common Pleas, Juvenile Division, in which the trial court held that the consent of appellant, Denise Couch, was not required prior to the final adoption of her children, Veronica and Cody Doyle.
 {¶ 2} Both parties stipulated to the following facts. The Ashtabula County Children Services Board ("ACCSB") took custody of Veronica, born May 24, 1998, on July 5, 1999. She was placed with a foster family.
 {¶ 3} Cody was born on September 15, 1999. Cody was placed with Carol Ingram, a family friend, just four days after his birth.
 {¶ 4} Charles Doyle, the natural father of both Veronica and Cody, was granted custody of Veronica on June 22, 2000. On that same date, the trial court denied appellant visitation with Veronica because she had failed to follow the case plan that had been established. That plan included the requirements that she remain sober and find steady employment. Appellant was granted supervised visits with Cody, but only on the condition that she was to accumulate the funds necessary to cover the costs of the supervised visits. She was to contact the court when she was able to do so.
 {¶ 5} Appellant was subsequently incarcerated in the Ashtabula County Jail from November 4, 2001 to March 31, 2002. On May 15, 2002, she wrote a letter to the Ashtabula County Juvenile Court, requesting visitation with Cody. Susan Doyle, Charles Doyle's new wife, filed an adoption petition on October 1, 2002, seeking to adopt both Veronica and Cody Doyle. On November 18, 2002, six months after her letter to the trial court, the court issued a judgment entry staying hearings on appellant's visitation request with her son Cody pending the outcome of the proposed adoption.
 {¶ 6} Appellant subsequently found employment with a temporary agency on October 22, 2002, after relocating to her hometown, Erie, Pennsylvania. She made four child support payments after securing employment. She had made no child support payments from August 1, 2000 until her employment in October 2002.
 {¶ 7} Appellant had counsel appointed on December 4, 2002. A hearing was held before a magistrate on February 11, 2003, to determine if her consent was necessary and whether the adoption was in the children's best interest. On March 11, 2003, the magistrate's decision was released, finding that, pursuant to R.C. 3107.07, appellant's consent to the adoption was not required as the petitioner had proven, by clear and convincing evidence, that appellant failed to communicate, without justifiable cause, with the children for one year prior to the filing of the adoption petition. However, the magistrate further found that petitioner did not prove that appellant failed to provide maintenance and support of her children, without justifiable cause, for one year prior to the filing of the adoption petition. Finally, the magistrate concluded that it was in the children's best interest for the adoption to proceed.
 {¶ 8} Appellant filed objections to the magistrate's decision. The trial court overruled the objections and issued a judgment entry adopting the magistrate's decision.
 {¶ 9} A timely appeal was filed, presenting a single assignment of error:
 {¶ 10} "The trial court erred in holding that the consent of the natural mother, Denise Couch, was not required pursuant to R.C. 3107.07 and that the adoption was in the children's best interest."
 {¶ 11} R.C. 3107.07, governing consent to adoption, states that a natural parent's consent to an adoption is not required where that parent has failed, without justifiable cause, to communicate with the child or to provide for the maintenance and support of the child for a period of at least one year prior to the filing of the adoption petition. R.C. 3107.07(A).
 {¶ 12} The petitioner for adoption maintains the burden of proving, by clear and convincing evidence, both that the natural parent has failed to communicate with the child for the requisite one-year time period, and that this failure was without justifiable cause. In re Bovett (1987), 33 Ohio St.3d 102, paragraph one of the syllabus. Once the petitioner has met that burden, the natural parent has the burden of presenting evidence to indicate that the failure to communicate was justifiable. Bovett at paragraph two of the syllabus. However, the ultimate burden remains with the petitioner throughout. Bovett at 104.
 {¶ 13} Whether a natural parent's failure to communicate with the child for the requisite one-year period is a determination for the trial court, and will not be disturbed on appeal unless such a determination is against the manifest weight of the evidence. (Citation omitted.) In re Geisman (Sept. 29, 2000), 11th Dist. No. 99-A-0071, 2000 Ohio App. LEXIS 4572, at 6.
 {¶ 14} In the instant case, appellant concedes that she did not communicate with Veronica or Cody for the one-year time period, but contends that the failure to communicate was justifiable due to her incarceration, a restraining order, and a pending letter she sent to the court requesting visitation. Susan Doyle filed her adoption petition on October 1, 2002. Therefore, the statutory one-year time period we must consider is October 1, 2001 through October 2, 2002. Appellant asserts that she was incarcerated for a "substantial portion" of the requisite one-year time period. She was confined from November 4, 2001 until March 21, 2002. Citing In re Schoeppner, she asserts that incarceration of a natural parent does not annul the consent requirement. In re Schoeppner (1976), 46 Ohio St.2d 21, 24. We find reliance on Schoeppner to be misplaced. Ohio courts have maintained that incarceration alone does not constitute a "willful failure to properly support and maintain a child" rendering void the consent requirement. Id. That same rationale can be applied in regard to communication. However, a natural parent's term of incarceration does not prevent that parent from communicating with the child or otherwise toll the one-year statutory time period. Therefore, although appellant was incarcerated, she was not precluded by that incarceration from communicating with her children.
 {¶ 15} Appellant also asserts that the restraining order in effect against her from May 11, 2000 forward barred her from communicating with Veronica. Charles Doyle, the natural father, testified at the adoption hearing that he sought the restraining order to prevent appellant from randomly appearing at his home intoxicated and disruptive, which she had previously done. Doyle had custody of only Veronica at that time. The restraining order as issued reads: "The Defendant, [Couch], is hereby restrained and enjoined from coming to [Doyle's] place of residence * * * or any other place where he and/or the minor child, Veronica Doyle may be."
 {¶ 16} Thus, the restraining order prohibited appellant from physically approaching Doyle's residence or anywhere he was with Veronica. Doyle subsequently gained custody of Cody. Therefore, the restraining order obtained relating to Veronica had the effect of prohibiting Couch from physically approaching Cody as well, as he resided in the home.
 {¶ 17} While the restraining order did act to bar physical contact between appellant and the children, we must take care not to equate visitation with communication, and recognize that a parent can communicate with a child notwithstanding the inability to physically visit with the child. The restraining order placed a limit on the type of communication appellant could legally attempt with the children without violating the order. However, the restraining order does not provide per se justification for a failure to communicate as other forms of communication remain. Appellant was not precluded from sending cards or letters to the children or otherwise attempting to communicate outside the realm of physical visitation.
 {¶ 18} Regarding Cody, appellant contends that she was permitted to have supervised visits with him and was to contact the court when she had funds available to pay for the program which sponsors supervised visitation. Appellant indicates that she wrote a letter to the court attempting to initiate supervised visitation within the one-year time period, but the process was stayed pending the results of the adoption petition hearing, as justifiable cause for her failure to communicate. As noted supra, she wrote a letter to the trial court on May 15, 2002, notifying the court that she was prepared to begin supervised visitation with Cody pursuant to the previous court order.
 {¶ 19} The trial court ultimately held that request in abeyance pending a determination in the adoption proceeding. Again, we conclude that appellant was not precluded from attempting other means of communication as she awaited the trial court's decision on her visitation request. Moreover, as the trial court noted, a letter requesting visitation sent to the court cannot be deemed communication with the child, as the child remains unaware that the parent is attempting meaningful communication. Therefore, although the request for visitation was not answered in a timely manner, appellant was still able to utilize other forms of communication outside of physical visitation, as visitation is one form of communication but certainly not the sole method.
 {¶ 20} Therefore, based on the foregoing, we conclude the trial court did not err in finding that appellant's failure to communicate with her children one year prior to the filing of the adoption petition was without justifiable cause and in finding that her consent to the adoption was not required. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
Christley, J., concurs.
O'Neill, J., dissents with dissenting opinion.