[Cite as *In re Adoption of J.A.B.*, 2014-Ohio-1375.]

# THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO


| | | |
|---|---|---|
| ADOPTION OF: J.A.B., JR. | : | **O P I N I O N** |
| | : | **CASE NO. 2013-T-0114** |


Civil Appeal from the Trumbull County Court of Common Pleas, Probate Division, Case No. 2013 ADP 0012.

Judgment: Affirmed.


*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483 (For Appellant, Terry L. Paronish).

*John H. Chaney, III,* Daniel Daniluk, L.L.C., 1129 Niles-Cortland Road, S.E., Warren, OH 44484 (For Appellee, Jasper A. Beede, Sr., Father).


COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Terry L. Paronish ("Aunt"), appeals from the October 21, 2013 judgment of the Trumbull County Court of Common Pleas, Probate Division, denying her petition for placement for adoption.

{¶2} On August 27, 2003, J.A.B., Jr. ("the minor child") was born in Texas to Jenny J. Paronish-McNabb ("Mother") and appellee, Jasper A. Beede, Sr. ("Father").[1] Mother and Father married after their son was born. The parties later divorced.

---

1. Aunt and Mother are sisters.

{¶3} The minor child, during the early years of his life, lived at various locations including Ohio, Louisiana, and Texas. In August 2005, while the minor child and his parents were residing along the Gulf coast, Hurricane Katrina hit the area, causing severe destruction. As a result of the devastating storm, they lost everything, including a place to live. Due to circumstances beyond their control, Father and Mother agreed that it was best, at that time, for the minor child to reside back in Ohio with Aunt.

{¶4} Aunt, an unmarried Ohio resident, agreed to care for her nephew in the fall of 2005. At that time, Father was employed. Although Father did not send money for the minor child to Aunt, he indicated he sent money to Mother, apparently after the couple split up. Father maintained contact with his son through letters and cards sent via mail as well as through phone calls. Thereafter, from around that period through sometime in 2008, Father had run-ins with the law and was in prison. He was incarcerated during that time-frame with the exception of a seven-month period. Father continued to maintain contact with his son through letters and cards.

{¶5} Aunt later filed for custody of her nephew. On April 10, 2008, the Trumbull County Court of Common Pleas, Juvenile Division, granted Aunt legal custody of the minor child, Case No. 2006 JP 352. The juvenile court found that the minor child was dependent upon Aunt for all care and support and that his natural parents were unsuitable and/or unfit to care for him.

{¶6} Father began another prison term in 2009. He is scheduled to be released from a Texas prison in 2019, but is eligible for parole this summer. Father has continued to maintain contact with his son through letters and cards. He opposes

2

the termination of his parental rights. On the other hand, Mother, a Missouri resident, filed a consent on April 15, 2013 to have Aunt adopt the minor child.

{¶7} On May 7, 2013, Aunt filed a petition for placement for adoption with the Trumbull County Court of Common Pleas, Probate Division, Case No. 2013 ADP 0012. Aunt alleged that the parents abandoned the minor child by failing to support or visit him within one year prior to the filing of her petition pursuant to R.C. 3107.07. Aunt further alleged that adoption would be in the minor child's best interests.

{¶8} On May 31, 2013, Father filed a pro se written objection(s) to adoption, an answer, a request for appointment of an attorney ad litem, a bench warrant, or in the alternative, a telephonic/video conference, and a continuance. In response, the probate court appointed counsel for Father.

{¶9} A hearing on Aunt's adoption petition was held on September 9, 2013. Aunt was represented by counsel and testified at the hearing. Father was also represented by counsel and testified via telephone from prison in Texas. Mother, who previously consented to the adoption, did not attend the hearing.

{¶10} According to Father, he maintained consistent contact and communication with his son through the mail since 2005 by sending multiple letters, cards, and homemade "gifts." The minor child and Aunt also sent responses back to him. Around that period through sometime in 2008, Father was incarcerated, with the exception of a seven-month period, and had no cash income. Since his latest 2009 incarceration, Father has continued to send letters to his son from prison and has no cash income.

{¶11} According to Aunt, Father never paid her any support for the minor child, even when he was employed. Aunt acknowledged that Father has had contact and

3

communication with his son for many years, and throughout his incarcerations, through letters, cards, and homemade "gifts."

{¶12} Following the hearing, and at the court's request, Aunt and Father submitted post-trial briefs. On October 21, 2013, the probate court concluded that Aunt failed to sustain the burden of proof that Father had abandoned the minor child. Thus, the court denied Aunt's adoption petition as consent of Father is required. Aunt filed a timely appeal raising three assignments of error:

{¶13} "[1.] The trial court erred in not determining that the father failed to support or communicate with the minor child in the year prior to the juvenile court granting appellant legal custody (placement of the minor in the home of the petitioner).

{¶14} "[2.] The trial court erred in finding that letters from prison are not di minimis (sic) contact with a minor child for purposes of determing (sic) his right to consent.

{¶15} "[3.] The trial court erred in finding that father had justifiable cause to not support the child because he was in prison."

{¶16} Preliminarily, we note that Aunt's appeal focuses on the denial of her May 7, 2013 adoption petition in which she alleged that the parents abandoned the minor child by failing to support or visit him within one year prior to the filing of her petition pursuant to R.C. 3107.07. Aunt additionally alleges that the parents also abandoned their son within one year prior to April 10, 2008 when she was granted legal custody. Thus, Aunt is essentially requesting the termination of Father's parental rights including his right to consent regarding the placement and/or adoption of the minor child. *See generally In re Adoption of Lasky*, 11th Dist. Portage Nos. 2004-P-0087, 2004-P-0088,

4

and 2004-P-0089, 2005-Ohio-1565, ¶17 (holding that adoptions terminate fundamental rights of natural parents.)

**{¶17}** We commend Aunt for being involved and supporting her nephew due to such an unfortunate set of events. However, for the following reasons, we fail to see that the probate court committed any error in requiring the consent of Father with respect to Aunt's adoption petition.

**{¶18}** "[I]t is well established that a parent's right to raise a child is an essential and basic civil right. *In re Hayes* (1997), 79 Ohio St.3d 46, 48 * * *. The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶14 * * *. See, also, *In re Smith* (1991), 77 Ohio App.3d 1, 16 * * *. Based upon these principles, the Ohio Supreme Court has determined that a parent 'must be afforded every procedural and substantive protection the law allows.' (Citation omitted.) *Hayes* at 49." *In re Phillips*, 11th Dist. Ashtabula No. 2005-A-0020, 2005-Ohio-3774, ¶22. (Parallel citations omitted.)

**{¶19}** "In cases involving the termination of parental rights, an appellate court applies the civil manifest weight of the evidence standard of review. *In re D.H*, 11th Dist. Geauga No. 2007-G-2759, 2007-Ohio-3337, ¶20-21. 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 * * * (1978), syllabus." *In re B.R.C. and E.J.C.*, 11th Dist. Portage Nos. 2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶41. (Parallel citation omitted.)

5

{¶20} In her first assignment of error, Aunt argues the probate court erred in not determining that Father failed to support or communicate with the minor child in the year prior to the juvenile court granting her legal custody.

{¶21} R.C. 5103.16(D)(3) states in part:

{¶22} "If the parent or parents of the child * * * have abandoned the child, as determined under division (A) of section 3107.07 of the Revised Code, the application for approval of the proposed adoptive placement may be brought by the relative seeking to adopt the child * * * in the probate court of the county in which the child is a resident, * * * or where the person or persons with whom the child is to be placed reside.  Unless the parent, parents, or guardian of the person of the child personally have appeared before the court and applied for approval of the placement, notice of the hearing on the application shall be served on the parent, parents, or guardian."

{¶23} R.C. 3107.07(A) provides that consent to adoption is not required of:

{¶24} "(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

{¶25} This court stated in *In re Adoption of Pushcar*, 11th Dist. Lake No. 2005-L-050, 2005-Ohio-5114, ¶11-15:

{¶26} "We will reverse a trial court's determination under R.C. 3107.07(A) only if it is against the manifest weight of the evidence.  *In re Adoption of Masa* (1986), 23

6

Ohio St.3d 163, * * *, at paragraph 2 of the syllabus; *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, * * *, at paragraph four of the syllabus.

{¶27} "In *Bovett*, the Court set forth the standard to apply in proceedings under R.C. 3107.07(A). The Court held:

{¶28} "'1. Pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause. (*In re Adoption of Masa* (1986), 23 Ohio St.3d 163, * * *, paragraph one of the syllabus, followed.)

{¶29} "'2. Once the petitioner has established, by clear and convincing evidence that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner.

{¶30} "'3. Under R.C. 3107.07(A), the probate court shall determine the issue of justifiable cause by weighing the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support. The court shall determine whether the parent's failure to support the child for that period as a whole (and not just a portion thereof) was without justifiable cause.' Id. at paragraphs one, two, and three of the syllabus." (Parallel citations omitted.)

{¶31} As stated, Aunt alleged in her May 7, 2013 adoption petition that the parents abandoned the minor child by failing to support or visit him within one year prior to the filing of her petition pursuant to R.C. 3107.07. Following Father's

7

objections, a hearing on the petition was held. Father testified that he maintained consistent contact and communication with his son through the mail since 2005 by sending multiple letters, cards, and homemade "gifts." The minor child and Aunt also sent responses back to him. Around that period through sometime in 2008, Father was incarcerated, with the exception of a seven-month period, and had no cash income. Since his latest 2009 incarceration, Father has continued to send letters to his son from prison and has no cash income.

{¶32} Our review of the record supports the probate court's findings that Father was without income during the one year preceding the filing of Aunt's May 7, 2013 adoption petition and throughout his incarceration and that Father had more than de minimis contact with the minor child. In fact, within the one year period preceding her filing of the adoption petition, Aunt acknowledged that Father has had contact and communication with his son through mail correspondences.

{¶33} Aunt also alleges that the probate court should have focused on the time period within one year of her being granted legal custody of the minor child, i.e., April 10, 2008. However, the record also reflects that Father did not abandon his son during that time period. Again, around 2005 through sometime in 2008, Father was incarcerated, with the exception of a seven-month period, had no cash income, and communicated with his son through letters. Thus, Father was in a similar position during 2007 to 2008 as he was in the one year period preceding the filing of Aunt's adoption petition in 2013. Therefore, contrary to Aunt's assertion, nothing has changed.

**{¶34}** Upon review, the probate court correctly determined that Father "was without income during the one year preceding the filing of the petition for placement for adoption *and throughout his incarceration*" and that Father had "more than de minimis contact with the minor." (Emphasis added.) Furthermore, using either the year prior to the April 10, 2008 legal custody date or the year prior to the May 7, 2013 adoption petition filing, the record establishes that Father did not abandon his son under R.C. 5103.16(D)(3) and 3107.07(A). Beginning in 2005 through the date of the September 9, 2013 hearing, Aunt testified that Father sent the minor child a letter once every couple of months. Father, however, testified that he sent letters to his son more often. Regardless, the time-frame evidence reveals that Father communicated with his son, through his only established means, within the year prior to the April 10, 2008 legal custody date and within the year prior to the May 7, 2013 adoption petition filing. Thus, Father's consent to adoption is required.

**{¶35}** Aunt's first assignment of error is without merit.

**{¶36}** In her second assignment of error, Aunt contends the probate court erred in finding that letters from prison are not de minimis contact with the minor child for purposes of determining Father's right to consent.

**{¶37}** "A trial court is not obligated to find justifiable cause exists solely on the basis that a parent is incarcerated. *Dallas v. Dotson*, 113 Ohio App.3d 484, * * * (9th Dist.1996); *In re A.M.W.*, 9th Dist. Medina Nos. 07CA0062-M, 07CA0063-M, 2008-Ohio-1456; *In re Adoption of Caleb M.J.*, [6th Dist. Lucas No. L-07-1186, 2007-Ohio-5599,] at ¶11. Instead, when a parent is in prison, reviewing courts have determined that imprisonment is one of several factors the court should consider. *In re D.R.*, 7th

9

Dist. Belmont No. 11 BE 11, 2011-Ohio-4755, ¶14." *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. 2013-06-090 and 2013-06-091, 2013-Ohio-4719, ¶17. (Parallel citation omitted.)

**{¶38}** Incarceration does not preclude a parent from communicating with his child. *In re Adoption of Doyle*, 11th Dist. Ashtabula Nos. 2003-A-0071 and 2003-A-0072, 2004-Ohio-4197, ¶14. An incarcerated defendant may send cards or letters to his child or otherwise attempt to communicate outside the realm of physical visitation. *Id.* at ¶17.

**{¶39}** In this case, the record establishes that Father is no model citizen. However, Father sought to maintain a bond with the minor child from the time of his son's birth and throughout his prior and current incarcerations. In fact, Father did not allow his incarcerations to hinder his attempts to remain in contact with his son. As stated, **from** 2005, Father has communicated with the minor child through letters from prison, his only permitted means of communication allowed by Aunt. The minor child and Aunt also sent responses back to him. Father also sent his son cards and homemade "gifts."

**{¶40}** Aunt opposes the probate court's finding that she "conceded" that Father had more than de minimis contact with the minor child. However, a review of the record reveals that Aunt, at a minimum, acknowledged that Father has had contact and communication with his son for many years, and throughout his incarcerations, i.e., from 2005, through letters, cards, and homemade "gifts."

10

**{¶41}** Based on the facts presented, the probate court did not err in finding that Father had more than de minimis contact with his son for purposes of determining his right to consent.

**{¶42}** Aunt's second assignment of error is without merit.

**{¶43}** In her third assignment of error, Aunt maintains the probate court erred in finding that Father had justifiable cause to not support the minor child because he was in prison.

**{¶44}** Parents have a duty in Ohio under common and statutory law to support their children. *Haskins v. Bronzetti*, 64 Ohio St.3d 202, 205 (1992). However, the person in custody of the child is not entitled to receive support payments from non-custodial parents on the basis of a general duty of support when no support order was issued at the time of the custody award. *See Meyer v. Meyer*, 17 Ohio St.3d 222, syllabus (1985). In addition, a natural parent is not obligated to provide support where the person in custody of the child is advised of the parent's financial condition and expresses no interest in receiving financial assistance. *In re Adoption of Hadley*, 2d Dist. Greene No. 90 CA 117, 1991 Ohio App. LEXIS 3783, *7-8 (Aug. 1, 1991).

**{¶45}** The record in this case reflects that Aunt did not express an interest in receiving financial assistance from Father. The juvenile court considered the issue of child support and stated in its April 10, 2008 order that "[n]o child support is being requested at this time." Aunt understood that there was no court order requiring Father to pay support. In fact, when asked about this issue during the September 9, 2013 hearing before the probate court, Aunt outlined her reasoning for not requesting financial assistance from Father stating that it was due to his incarceration. Thus, Aunt

cannot now use Father's lack of providing financial assistance as a basis for terminating his parental rights.

{¶46} The facts in this case do not support a finding that Father has abandoned or lost interest in his son. Even though Aunt did not pursue support from Father, the facts here also reveal that Father is not the type of parent that is able to financially support his child but is unwilling to do so. Rather, Father has maintained contact and communication with the minor child and, when previously employed, provided financial assistance to Mother for their son. Thus, Father is the type of parent willing to support, but due to his incarceration, even though it was his own voluntary act to commit a crime, is unable to do so as he has no income.

{¶47} The probate court properly considered Father's incarceration as *a* factor in determining that Aunt had not presented sufficient evidence to support a finding that Father failed without justifiable cause to support his son.

{¶48} Aunt's third assignment of error is without merit.

{¶49} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas, Probate Division, is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

12