[Cite as *In re Adoption of K.J.F.*, 2020-Ohio-977.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

IN RE:  THE ADOPTION OF:

       **K.J.F.,**

**[K.E. - APPELLANT]**

**CASE NO.  17-19-21**

**O P I N I O N**

Appeal from Shelby County Common Pleas Court
Probate Division
Trial Court No. 2019 ADP 00007

**Judgment Affirmed**

**Date of Decision:   March 16, 2020**

APPEARANCES:

    *Royce A. Link* **for Appellant**

    *Ralph A. Bauer* **for Appellee**

**SHAW, P. J.**

{¶1} Appellant-respondent, K.E. ("Mother") appeals the October 7, 2019 judgment of the Shelby County Court of Common Pleas, Probate Division, finding that appellees-petitioners, G.F. and L.F. ("Paternal Grandparents"), proved by clear and convincing evidence that Mother had failed to provide more than *de minimis* contact with her biological child ("K.J.F."), and that Mother had failed to provide maintenance and support for K.J.F. in the year immediately preceding the filing of the adoption petition. As a result, the trial court concluded that Mother's consent to Paternal Grandparents' adoption of K.J.F. is not required and ordered the case to proceed on the adoption petition. On appeal, Mother argues that she had justifiable cause for failing to communicate with K.J.F. and for failing to provide maintenance and support for K.J.F. Therefore, Mother contends that the trial court's decision is against the manifest weight of the evidence.

*Facts and Procedural History*

{¶2} K.J.F. was born in 2017 to Mother and L.A.L.F. ("Father") who were not married. Father was named on K.J.F.'s birth certificate. The petitioners are Father's Step-Mother and Father.

{¶3} On February 6, 2019, Paternal Grandparents filed a Petition for Adoption of K.J.F. alleging that Mother's consent to the adoption is not required because (1) she had failed without justifiable cause to provide more than *de minimis*

contact with K.J.F. for a year immediately preceding the filing of the adoption petition; and (2) she had failed without justifiable cause to provide for the maintenance and support of K.J.F. as required by law for a period of at least one year immediately preceding the filing of the adoption petition. *See* R.C. 3107.07(A). Paternal Grandparents further included as grounds for their petition that K.J.F. is currently living in their home; that he was placed there on June 28, 2017, by the Shelby County Children Services Division under its supervision, and that they were granted legal custody of K.J.F. by the Shelby County Juvenile Court on June 29, 2018. (Doc. No. 1). Notice of a Hearing on the Petition was sent to Mother and she filed an objection to the adoption. The trial court set a hearing on the matter.

{¶4} On August 16, 2019, the trial court conducted a hearing on whether Mother's consent to the adoption is not required under R.C. 3107.07(A). Father executed his written consent to Paternal Grandparents' adoption in open court. Paternal Grandparents provided testimony in support of establishing that Mother's consent to the adoption is not required. Mother did not appear at the hearing due to her incarceration. However, testimony from two witnesses were presented in support of Mother's position that her attempts to provide more than *de minimis* contact with K.J.F. were significantly interfered with by Paternal Grandparents, and

that Mother had justifiable cause for her failure to communicate with and to provide support for K.J.F.

{¶5} On October 7, 2019, the trial court issued a judgment entry finding that Mother's consent to the adoption is not required. Specifically, the trial court found by clear and convincing evidence that Mother had failed without justifiable cause to provide more than *de minimis* contact with K.J.F., and had failed without justifiable cause to provide maintenance and support for K.J.F. in the year immediately preceding the filing of the adoption petition. Accordingly, the trial court determined that the adoption could proceed without Mother's consent.

{¶6} Mother filed a notice of appeal from this judgment entry, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED BY FINDING THAT MOTHER DID NOT HAVE DE MINIMIS CONTACT [SIC] WITH THE MINOR CHILD.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED IN FINDING THAT ANY FAILURE BY MOTHER TO HAVE DE MINIMIS CONTACT [SIC] WITH THE MINOR CHILD WAS WITHOUT JUSTIFIABLE CAUSE.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED BY FINDING THAT MOTHER LACKED JUSTIFIABLE CAUSE FOR NOT PROVIDING FOR**

**THE MAINTAINANCE AND SUPPORT FOR THE MINOR CHILD.**

{¶7} For ease of discussion, we elect to address the assignments of error together and out of order.

*First, Second, and Third Assignments of Error*

{¶8} On appeal, Mother argues that the trial court erred in finding her consent to Paternal Grandparents' adoption of K.J.F. is not required. Specifically, Mother argues that the trial court erred in determining that she had failed without justifiable cause both to provide more than *de minimis* contact with the child and to provide proper maintenance and support during the one-year look-back period of R.C. 3107.07(A).

*Legal Standard*

{¶9} The right of natural parents to the care and custody of their children is one of the most precious and fundamental in law. *In re Adoption of Masa*, 23 Ohio St.3d 163, 164 (1986) citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). An adoption permanently terminates the parental rights of a natural parent. *In re Adoption of Reams*, 52 Ohio App.3d 52, 55 (10th Dist.1989). Therefore, "[b]ecause adoption terminates these rights, Ohio law requires parental consent to an adoption unless a specific statutory exemption exists." *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 5 citing *In re Caudill*, 4th Dist. Jackson No. 05CA4, 2005-Ohio-3927, ¶ 14.

{¶10} One such statutory exemption to the consent requirement is contained in R.C. 3107.07(A), which states.

**Consent to adoption is not required of any of the following:**

**(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.**

R.C. 3107.07(A). "R.C. 3107.07(A) is written in the disjunctive." *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, 2014 WL 6871352, ¶ 23. "Therefore, a failure without justifiable cause to provide *either* more than *de minimis* contact with the minor or maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *Id.*; *see also In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶11} The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *See In re the Adoption of B.G.F.*, 3d Dist. Shelby No. 17-18-06, 2018-Ohio-5063, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23.

{¶12} The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than *de minimis* contact with the child. *In re Adoption of M.B.* at ¶ 23. Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "A trial court has discretion to make these determinations, and, in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." *In re Adoption of M.B.* at ¶ 25. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶13} If a probate court makes a finding that the parent failed to support or contact the children, the court proceeds to the second step of the analysis and determines whether justifiable cause for the failure has been proven by clear and convincing evidence.[1] *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236.

---

[1] Recently, the Supreme Court of Ohio articulated a three-step analysis for maintenance and support issues under R.C. 3107.07(A). Specifically, the Supreme Court state that "the court must first determine what the

The question of whether justifiable cause for the failure to contact the child has been proven in a particular case, "is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Id*. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial." (Internal quotations omitted.) *In re Adoption of L.C.W.*, 12th Dist. Butler No. CA2014-08-169, 2015-Ohio-61, ¶ 14.  In so doing, we must be mindful that the probate court is in the best position to observe the demeanor of the parties and assess the credibility and accuracy of the testimony.

*Evidence Adduced at the Hearing*

{¶14} In support of their position that Mother's consent to the adoption is not required, Paternal Grandparents both testified that in June of 2017, not long after his birth, K.J.F. was placed in their temporary custody by the Shelby County Children Services Division ("the Agency") due to the illegal drug use of both

---

law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. Second, the court determines whether during that year the parent complied with his or her obligation under the law or judicial decree. Third, if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450, ¶ 15.  The same burdens of proof and standards of review apply to steps two and three as stated in *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236.

Mother and Father rendering them incapable of caring for K.J.F. During this time, Mother was incarcerated at a community based correctional facility. While K.J.F. was in their temporary custody, Paternal Grandparents abided by the case plan in place with the Agency and took the infant to regular visitations with Mother. Paternal Grandparents testified that they also accepted Mother's collect calls from the institution which cost them upwards of $15.00 per call and hundreds of dollars during that time.

{¶15} Paternal Step-Grandmother testified that these calls from Mother focused on attempting to rekindle a relationship with Father, who lived in the home with Paternal Grandparents, rather than attempting to communicate with K.J.F. Paternal Grandfather explained that as a condition of Father being permitted to live in Paternal Grandparents' home, he had to refrain from being in contact with Mother. Paternal Grandfather stated that when Father "opens the door to [Mother], he loses his rationale, it's like poison." (Doc. No. 76 at 51). He recounted that since Father has "disconnected" with Mother and has been immersed in a positive support system, Father has been able to remain clean and sober for the past nine months. (Id.). Paternal Grandparents further noted that Mother's calls to Paternal Step-Grandmother became more frequent, and her attempts to contact Father more persistent, when Father changed his phone number several times to avoid Mother.

{¶16} Paternal Grandparents testified that during the year preceding the filing of the adoption petition, Mother had been released from the community based correctional facility and was among the general population for approximately three months. During this time, Mother made no attempt to see or have contact with K.J.F. Paternal Grandparents both stated that they had lived for several years at the same address, where K.J.F. also resides, and Mother knew where they lived. Paternal Grandfather testified that multiple people attempted to persuade Mother to visit K.J.F. while she was released to no avail. He explained the only requirement they had for Mother coming to the home for visitation was for her to be clean and sober.

{¶17} Mother eventually returned to prison for the majority of the one-year statutory timeframe. Mother made phone calls to Paternal Step-Grandmother from prison. Paternal Step-Grandmother admitted that she refused the collect calls. Paternal Grandparents explained that once they were granted legal custody of K.J.F. and the Agency's involvement was terminated, they no longer accepted Mother's collect calls from prison primarily because of the cost of the calls, but also because they assumed the nature of the calls would continue to be to contact Father, who resided with them, rather than to communicate with K.J.F. Nevertheless, Paternal Grandfather asserted that there were other ways for Mother to contact Paternal Grandparents by using social media, a method she had used in the past to contact

Paternal Grandfather, or through Mother's mother (Maternal Grandmother). Paternal Grandfather noted that they facilitated regularly scheduled visitations between K.J.F., his Maternal Grandmother, and Mother's other child, of whom Mother also does not have custody.

{¶18} Paternal Grandparents further acknowledged receiving three written correspondences in the mail from Mother while she was incarcerated. In one letter dated May 28, 2018, Mother wrote to K.J.F. expressing her love for him and promising not to leave him again. Mother also included biblical verses with the letter and a printed letter entitled "Sometimes Mommies Go Away." Notably, in this mailing Mother also sent a letter to Paternal-Step Grandmother apologizing for her past behavior and asking about K.J.F. Mother asked for Paternal Grandparents to write her back, answer her calls, or bring K.J.F. to the institution for visitation. Mother later sent K.J.F. two drawings and notes in the mail, one of which was for his birthday. Paternal-Step Grandmother acknowledged receiving the letters. She testified that she did not show them to K.J.F., but put them away in a drawer until K.J.F. is old enough to understand what they are.[2]

{¶19} Mother offered the testimony of a representative from the communications company that keeps records of the inmate calls at the facility where Mother is housed. The witness testified to phone logs from an account associated

---

[2] The record reflects that K.J.F. was not yet two-years-old when Mother sent the letters.

with Mother to establish the amount of calls Mother made during the relevant statutory timeframe. The witness explained that there are two layers of security verifying the identification of the inmate, a Personal Identification Number ("PIN") and voice authentication. However, there was no specific testimony enumerating the amount of calls Mother made to Paternal Grandparents.

{¶20} With regard to the issue of maintenance and support, Paternal Grandparents explained that they did not seek a child support order to be issued by the juvenile court "with the understanding that [Father] and [Mother] would never be held for any kind of financial responsibility. Because the reality was, we knew they'd never be able to afford it." (Doc. No. 76 at 60). Therefore, an order obligating Mother to pay child support was not put into effect. Mother offered the testimony of Father's Mother, Paternal Grandmother (Paternal Grandfather's former wife), who was in contact with Mother during the relevant statutory time period. Paternal Grandmother testified that she provided Mother with pictures of K.J.F. She recalled that Mother wanted to send $5.00 for K.J.F's support, but needed additional information from Father in order to send the money. Paternal Grandmother did not know whether Mother ever sent the money.

*Discussion*

*1. Failure to Provide Maintenance and Support*

Case No. 17-19-21

{¶21} In its October 7, 2019 Judgment Entry, the trial court found that there

is no justifiable cause for Mother's failure to provide maintenance and support for

K.J.F. Specifically, the trial court found:

> **During the one year time period Mother was not incarcerated for the first two and a half months or so. After that she was and remains incarcerated.**
>
> **Petitioners credibly established that Mother did not provide any support for the child during the one year period. Moreover, because of Mother's ongoing addiction and behavior problems they admit they had not been relying upon or realistically expecting her to do so. No formal request was ever made by them to insist upon support.**
>
> **There is no child support order.**
>
> **Mother, nevertheless, has a legal duty to provide support for her child. She clearly has failed to do so. Petitioners are not required to insist upon, expect or enforce this obligation. How the Petitioners would have utilized this support if provided is a separate issue. Mother's obligation to provide said support does not depend upon the Petitioners' decision on what to do with it if is received.**
>
> **Moreover, there was testimony by the paternal grandmother [] that she had been contacted by the Mother who admitted she was working at the prison and was able, and was offering, to send Father $5.00 towards support, but was in need of his address. No such support was ever sent to the custodians/Petitioners. There is no evidence it was sent to the Father.**
>
> **The Court recognizes that incarceration and the *proven* inability to provide support can be a defense to the failure to provide support. Mother failed, however, to present any rebuttal evidence as to why she failed to provide any type of support prior to being incarcerated and, moreover, why she failed or was unable to provide any type of support while incarcerated particularly after**

-13-

**having admitted her ability and offer to do so. Absent any credible rebuttal evidence the Court cannot find any justification for the failure to pay support.**

(Doc. No. 64 at 4.)(emphasis sic).

{**¶22**} On appeal, Mother argues that Paternal Grandparents' decision not to seek a judicial support order establishing her child support was "justifiable cause" for her failure to provide maintenance and support. Recently, the Supreme Court of Ohio reviewed the various statutory provisions governing a natural parent's duty to support his or her child. *See In re Adoption of B.I.*, 157 Ohio St. 3d 29, 2019-Ohio-2450. The majority in *B.I.* explained that:

> **R.C. 3103.03 sets forth a parent's obligation to support his or her children in the absence of a child-support order. "Under R.C. 3103.03, all parents, whether married or not, have a duty to support their minor children; it follows logically from this that all children have a right to be supported by their parents, regardless of the parents' marital status." *In re Dissolution of Marriage of Lazor*, 59 Ohio St.3d 201, 202, 572 N.E.2d 66 (1991).** [3] **But this general statutory declaration does not end our inquiry; it is merely the beginning.**
>
> **\* \* \***
>
> **Ohio's statutory scheme regarding families and children makes clear that there are two statuses of parental obligation: first, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general obligation once the court issues its decree. When R.C. 3107.07(A) uses 'or' in the phrase 'by law or judicial decree,' it recognizes that a parent's**

---

[3] R.C. 3103.03(A) also states that "[t]he biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor."

> **obligation of support can have one of two possible statuses–
> general or specific. But a parent can have only one obligation
> status at a time. \* \* \* A parent is subject either to the general
> obligation or to a specific obligation and is evaluated accordingly.**

*B.I.* at ¶ 21, 27.

{¶23} Mother relies on the rationale expressed in *In re Adoption J.A.B.* to bolster her stance that justifiable cause for failure to support under R.C. 3107.07(A) exists when the noncustodial parent was incarcerated, there was no existing child-support order, and the child's legal custodian had not expressed an interest in receiving financial assistance. *See In re Adoption J.A.B.*, 11th Dist. Trumbull No. 2013-T-0114, 2014-Ohio-1375, ¶ 45-46. However, the Eleventh District has since acknowledged its reasoning in *In re Adoption J.A.B.* does not consider a parent's general obligation to provide child support under R.C. 3103.03(A). *See Matter of Adoption of A.L.R.*, 11th Dist. Geauga No. 2019-G-0210, 2019-Ohio-4320, ¶ 13 (stating "[g]iven the emphasis *B.I.* places on that statute for its conclusion that a natural parent has a duty to provide support even in the absence of a support order, J.A.B. is not controlling"). Rather, the Eleventh District recognized that in the absence of a child support order, a natural parent has an independent obligation to provide support for his child regardless of whether a request for support is made. *See Matter of Adoption of A.L.R.*, 11th Dist. Geauga No. 2019-G-0210, 2019-Ohio-4320, ¶ 12.

**{¶24}** Here, we are not persuaded by Mother's argument that her incarceration and the absence of a support order obviated her independent obligation to provide support for K.J.F. Moreover, the record suggests that, while incarcerated, Mother was aware of her obligation to provide support for K.J.F., but took no further action. Therefore, we conclude the trial court's determination that Mother had failed without justifiable cause to provide maintenance and support for K.J.F. is supported by the manifest weight of the evidence. Accordingly, the third assignment of error is overruled.

*2. Failure to Provide More than De Minimis Contact*

**{¶25}** In its October 7, 2019 Judgment Entry, the trial court found that there was no justifiable cause for Mother's failure to provide more than *de minimis* contact with K.J.F., specifically the trial court found:

> **At all times relevant to the petition, the child was just over one (1) years old, being born January [] 2017. As a result any contact or communication by mother with the child would normally not be practical or meaningful to the child or their relationship unless that contact was in person. The child cannot read, write or speak on the phone.**
>
> **Evidence was presented that the Mother did send 3 cards to the child within the one year time period. Petitioners assert that they saved those cards and will deliver them to the child when the child is old enough to understand them. The Court finds no fault in this. Mother's choice of how to make contact with the child should certainly be evaluated in context of whether it was a reasonable method to establish a meaningful relationship with the child. The Court find that the contact standing alone, does not do that.**

**Additionally, the Petitioners admitted that Mother would make collect phone calls to their phone from her incarceration (which was approximately 9.5 months or so immediately prior to the petition for adoption being filed). Petitioners admit to refusing to pay for those calls because they had done so in prior years (when she was also incarcerated and the Children Services matters were pending) and were no longer willing to incur the expense. Instead they insisted she contact them through Facebook that was readily available and known to her and used in the past. The Court finds Petitioners were not required to pay for Mother's phone calls. Mother was also aware of their residence and mailing address.**

**\* \* \***

**The Court also finds credible the testimony that the Mother has had continuing and serious issues with drug addiction and dependency and that that is reason for the parents loss of custody in the Children Service's matter. The Petitioners credibly testified that this unresolved behavior has made it difficult for the Petitioners to be willing to agree to leave the child in the care of the Mother without establishing an agreement for proper supervision and receiving some assurance that Mother has addressed those issues. The Court finds the Petitioners' concerns for the safety of the child reasonable.**

**\* \* \***

**Petitioners admit that because of their concerns that they also restricted the choice of Mother's way to contact them, because her telephone behavior and attempts to contact [Father] were disruptive to their household. They credibly assert that Mother knew (based upon Mother's past use thereof) that she could, instead, contact them through social media on their Facebook page and that she never made any attempt to do so. Mother was able to use social media from incarceration. They acknowledge that Mother made a couple of initial attempts to contact them directly by phone or at home but that it was not for, and did not result in, visitation with the child or an agreement to address their concerns for the safety of the child.**

**\* \* \***

> **Overall, the Court finds that Mother had not made any meaningful efforts to contact the custodian/Petitioners' to request or work out appropriate visitation. Her efforts to contact the Father were not for that purpose. The Petitioner[s'] whereabouts were also clearly known to the Mother. Mother also made no effort to seek court ordered visitation under acceptable parameters.**
>
> **Overall, the Court finds, by clear and convincing evidence, that Mother failed without justifiable cause to provide more than de minimis contact with the minor child for a period of at least one year immediately preceding the filing of the adoption petition. The Court also finds that the Petitioners appropriately insisted on certain methods of contact to monitor Mother's communications and that Mother was aware of her ability to use those methods to obtain visitation. The Court finds that the Petitioners concerns regarding substance and drug abuse problems of the parents reasonable.**

(Doc. No. 64 at 2-3.)

{¶26} It is undisputed that during the one year statutory time period, Mother attempted several times to call Paternal Step-Mother and sent a letter and two drawings to K.J.F. while incarcerated. It is also uncontroverted that Paternal Grandparents refused to answer Mother's phone calls, did not respond to Mother's letters, and did not share Mother's drawings with K.J.F. Thus, Mother asserts that Paternal Grandparents' conduct significantly interfered with her attempts to contact K.J.F. and as such constitutes justifiable cause. She further challenges the trial

court's characterization of her actions as failing to be meaningful forms of contact with K.J.F.

{¶27} The trial court found the testimony of Paternal Grandparents credible regarding their reasons for not accepting Mother's collect calls from prison; specifically the expense of the calls and relying upon their past experience that Mother's calls were intended to establish communication with Father rather than with K.J.F. The trial court also found their testimony credible in expressing their reluctance to continue a relationship with Mother until she demonstrated her commitment to a drug-free life for the safety of K.J.F. and their family.

{¶28} In examining the written correspondence to K.J.F. from Mother, the trial court also found Paternal Grandparents' testimony credible regarding their decision not to share the letter and drawings with K.J.F.; specifically that K.J.F. would not be able to understand the communications. While this may certainly be the case with respect to Mother's letter to K.J.F expressing remorse for her absence in his life, we are nevertheless a little troubled by the trial court's willingness to unilaterally accept the Paternal Grandparents' assumption that the nearly two-year-old could not appreciate Mother's drawings of a lion cub and a dinosaur, and therefore that their decision not to show K.J.F. the drawings was justified.

{¶29} This notwithstanding, the trial court essentially determined that Mother's attempts to contact K.J.F. were *de minimis* in nature. Stated differently,

the trial court determined that Mother failed to provide more than *de minimis* contact as required by the statute. As previously noted, the question of whether this standard has been met is a factual one and we review the trial court's determination in this regard under an abuse of discretion. *See In re Adoption of M.B.*, 131 Ohio St.3d 186 at ¶ 25; *In re Adoption of K.A.H.*, 10th Franklin No. 14AP-831, 2015-Ohio-1971, ¶ 10. In light of the testimony regarding Mother's failure to communicate or have contact with K.J.F when she was not incarcerated during the one year statutory time frame, we cannot find the trial court abused its discretion in according little weight to the two drawings Mother sent K.J.F. from prison.

{¶30} We next turn to address the trial court's determination that Paternal Grandparent's conduct did not rise to the level of significant interference so as to constitute justifiable cause. *See In re Adoption of Holcomb*, 18 Ohio St.3d 361, (1985), paragraph three of the syllabus ("Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for * * * failure to communicate"). The Supreme Court of Ohio has refused to adopt a "precise and inflexible meaning" for "justifiable cause," but instead has stated that "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *Id.* at 367 (1985), citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301 (1980). In

this regard, the Supreme Court stressed that "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id.*

{¶31} It is apparent that the trial court did not find the reasoning of Paternal Grandparents to limit their interactions with Mother for the safety of K.J.F and Father's sobriety and their opinion that showing K.J.F. the drawings from Mother would have no meaningful impact on him due to his young age, rose to the level of significant interference. Under these specific circumstances, and giving due deference to the finder of fact, we cannot say that the trial court's decision finding a lack of justifiable cause in this instance is against the manifest weight of the evidence.

{¶32} Moreover, as previously discussed, R.C. 3107.07(A) is written in the disjunctive. "Therefore, a failure without justifiable cause to provide *either* more than *de minimis* contact with the minor or maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *Id.*; *see also In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9. Having already concluded that the record supports the trial court's decision on Mother's failure to provide support and maintenance, we find no merit to Mother's position that the trial court's determination on justifiable cause with

respect to her failure to provide more than *de minimis* contact constitutes reversible error. Accordingly, the first and second assignments of error are overruled.

{¶33} For all these reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**