[Cite as *In re E.E.B.*, 2018-Ohio-1021.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| IN RE E.E.B NKA E.E.H. | : | |
| | : | Case No. 17CA107 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Richland County Court
                                                            of Common Pleas, Probate Division
                                                            Case No. 2017-5025

JUDGMENT:                                       AFFIRMED

DATE OF JUDGMENT ENTRY:          March 16, 2018

APPEARANCES:

For Petitioner-Appellant:                    For Father-Appellee:

CHARLES D. LYNCH                          CHARLES T. ROBINSON
6 West 3rd Street, Suite 200              3 N. Main Street, Suite 400
Mansfield, OH 44902                          Mansfield, OH 44902

*Delaney, J.*

{¶1}   Petitioner-Appellant appeals the December 4, 2017 judgment entry of the Richland County Court of Common Pleas, Probate Division, denying his Petition for Adoption because Father-Appellee's consent to the adoption of his child was necessary.

{¶2}   This appeal is expedited and is considered pursuant to App.R. 11(C)(2).

### FACTS AND PROCEDURAL HISTORY

{¶3}   Father-Appellee and Mother are the parents of E.E.B. nka E.E.H., born on April 3, 2010. Father and Mother were not married or living together at the time of the child's birth. In August 2010, a paternity action was filed in the Richland County Court of Common Pleas, Domestic Relations Division. Father was determined to be the biological father of E.E.H. Father was ordered to pay child support and Father is current on his support. It appears from the record that the paternity action did not establish visitation.

{¶4}   Father visited with E.E.H. at least two times a month during the first two years of the child's life. Mother declined some visits because E.E.H. was suffering from separation anxiety. Father's last visit with E.H.H. was on April 10, 2012. Father and Paternal Grandmother visited with E.E.H. and brought the child birthday presents and an Easter basket.

{¶5}   Mother started living with her boyfriend, Petitioner-Appellant, on April 22, 2012. Petitioner is the former friend and roommate of Father. Mother and Petitioner live in Father's and Petitioner's former residence.

{¶6}   Father texted Mother on January 1, 2013 to request a visit with E.E.H. Father wanted to take E.E.H. to visit a family member's gravesite. Mother declined the visit because the child had just recovered from an illness. Father stated he stopped

requesting visitation with E.E.H. because he knew Mother would reject his requests. Father knew Mother's address, but Father did not send E.E.H. cards or presents. Father stated he changed his focus to saving his money to pursue visitation through the court system.

{¶7} Mother stated she had declined some of Father's requests for visitation with E.E.H., but she never told Father he was permanently barred from visiting with E.E.H. Mother would not offer alternative visitation opportunities when she denied Father's visitation requests. She told Father during her pregnancy that based on her family history, it was in the best interests of the child for Father to be consistently involved in the child's life. If Father could not be consistent, Mother would not say anything negative about Father, but she would not allow him to come in and out of the child's life. She felt Father understood her request for consistency. Mother denied interfering with Father's visitations with the child. Mother stated Father never asked to visit with the child.

{¶8} On August 31, 2015, Father contacted Mother through Facebook to request the child's social security number. Mother did not respond.

{¶9} Father worked with Paternal Grandmother to see if she could get visitation with E.E.H. Grandmother tried to contact Mother for visitation, but Mother did not respond. Grandmother's last contact with Mother was May 2016.

{¶10} On April 12, 2017, Father filed a motion to establish parenting time with the Domestic Relations Division.

{¶11} Mother and Petitioner changed their wedding date and were married after Father filed his motion for parenting time. On May 23, 2017, Petitioner filed a Petition for Adoption of E.E.H. with the Probate Division. Father objected to the petition.

{¶12} On November 21, 2017, the Probate Division held a hearing on the Petition for Adoption. The trial court bifurcated the hearing to first determine whether Father's consent to adoption was required under R.C. 3107.07(A). If the trial court determined Father's consent was not required under the statute, it would next consider the child's best interests.

{¶13} Pursuant to the statute, the parties stipulated at the hearing that Father did not have any contact with the child from May 23, 2016 to May 23, 2017. The issue before the trial court was whether the failure of Father to provide more than de minimis contact with the child was with justifiable cause.

{¶14} Father, Mother, and Paternal Grandmother testified at the hearing. At the conclusion of the hearing, the trial court found Petitioner failed to establish by clear and convincing evidence that Father failed to provide de minimis contact with the child. The trial court acknowledged that Father did not visit with E.E.H. and did not attempt to contact E.E.H. with cards or otherwise. The trial court also noted there was no court-ordered visitation established in the paternity action, thereby leaving it to the parties to work out visitation. The trial court stated:

I think both sides in this matter have good points and both sides in this matter have done some things that probably isn't the best thing to do when considering a child. Be that as it may, it's before me to make that determination and this Court draws a line when it comes to individuals attempting to say that there was unjustified interference and not following through unless a Motion is filed to get an order, that a person can get visitation because the old adage is how many times do you go to a dry well

and there's no water in the bottom * * * although it would have been much easier if Biological Father would have insisted to send come cards, that's not hard * * * but yet then on the other hand, it's problematic when, ah, if it started out communication broke down to no communication and I know there's a lot of emotion going on here from the nature of how this happened, but it happened, it is what it is, and so the Court's called upon to see if more than de minimis contact filing a Motion to get something established, because you don't have any right to visit without it, * * *

{¶15} However, on May 23, 2017 during the statutory one-year look-back period, Father filed a motion to establish visitation, which the Domestic Relations Division stayed pursuant to the pending Petition for Adoption:

* * * I believe that it does show that there's been an attempt, especially when the Motion's filed to get visitation and the Court has heard no testimony other than the fact there's been no visitation between [E.E.H.] and paternal grandmother or the Court assumes Father after May 23rd of 2017.

* * * sometimes the law is just not kind to get things moving on and here you folks have been sitting here since * * * six months, seven months or so. Well, again, it's, ah, it requires the Court to make a call as to whether the Court feels there's a substantial interference and if the filing of a Motion for visitation during the one year is sufficient. Ah, and I heard the testimony and that's why sometimes historical background is beneficial to see how the, the case gets here.

{¶16} The trial court then determined under "these narrowed circumstances" that there was justifiable cause for Father's de minimis contact with the child:

> * * * Father's filing the Motion for parenting time and that it was pending before the adoption's filed, that under these circumstances would not have been done if it wasn't for the position of Biological Mother that if you're not going to pay attention when this child's born, you're not going to pay any attention, not come in and be, I think as she put it, a hop in, hop out Father, which I can certainly understand how she would feel that way, but it's rather clear to the Court that it was the intention of Biological Mother that Father and/or, well, we'll just stick with Father that since he hasn't done what father's ought to in her position or her mind set, that you're not going to come in later.

(T. 131-145).

{¶17} The trial court journalized its decision denying the Petition for Adoption on December 4, 2017. It is from this judgment Petitioner now appeals.

**ASSIGNMENT OF ERROR**

{¶18} Petitioner raises one Assignment of Error:

{¶19} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE FILING OF A MOTION FOR PARENTING TIME IN THE DOMESTIC RELATIONS COURT PRIOR TO THE FILING OF AN ADOPTION PETITION CONSTITUTES IN AND OF ITSELF MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILD WHICH CONSTITUTES GROUNDS FOR DENYING PETITIONER'S REQUEST TO ADOPT THE MINOR CHILD."

**ANALYSIS**

{¶20} Petitioner contends the trial court erred when it denied its Petition for Adoption. We disagree.

{¶21} R.C. 3107.07(A) sets forth, in part, the requirements for a parent's consent to an adoption. R.C. 3107.07(A) states that a probate court may not grant a petition to adopt a minor child absent the consent of the child's parent. However, the statute further states that the consent of a parent is not required for adoption if the court finds that "the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition" R.C. 3107.07(A).

{¶22} The petitioner for adoption has the burden of proving by clear and convincing evidence that (1) the natural parent failed to either support or communicate with the child for the requisite one year period and that (2) this failure was without justifiable cause. *In re adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph one of the syllabus; *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph one of syllabus. In *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), the Supreme Court of Ohio explained that clear and convincing evidence is more than a preponderance of the evidence but does not rise to the level of beyond a reasonable doubt as required in criminal cases. It must produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. *Cross*, paragraph 3 of the syllabus. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court

as being against the manifest weight of the evidence. *In re Adoption of Breckenridge*, Franklin App. No. 03AP–1166, 2004–Ohio–2145, ¶ 10.

{¶23} If the petitioner meets his burden of proof, then the natural parent has the burden of going forward with evidence to show some justifiable cause for his or her failure to support or contact the child. However, the burden of proof never shifts from the petitioner. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987). Justifiable cause has been found to exist if the custodial parent significantly interferes with or discourages communication between the natural parent and the child. *In re Adoption of I.M.M.*, 5th Dist. Ashland No. 16 COA 018, 2016-Ohio-5891, ¶ 29 citing *In Re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). A probate court may examine any preceding events that may have a bearing on the parent's failure to communicate with the child, and the court is not restricted to focusing solely on events occurring during the statutory one-year period. *In re Adoption of Lauck*, 82 Ohio App.3d 348, 612 N.E.2d 459 (1992).

{¶24} The relationship between a parent and child is a constitutionally protected liberty interest. See *In re Adoption of Zschach*, 75 Ohio St.3d 648, 665 N.E.2d 1070 (1996). Therefore, any exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of the natural parents to raise and nurture their children." *In re Adoption of Schoeppner* 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

{¶25} The parties stipulated that Father had no contact with the child for the one-year statutory period. Father was current on his child support obligations. The issue in this case was whether Father had justifiable cause for his failure to support or contact the child during the statutory one-year period.

{¶26} The trial court first found that based on the circumstances of the case, Father had justifiable reasons for failing to support and contact the child. Mother was in a relationship with Petitioner, Father's former roommate and friend. The paternity action did not establish formalized visitation with the child. Visitation was dependent upon the parties. In the first few years of the child's life, Father did participate in visitation. At times, however, Mother denied Father's visitation requests and did not offer alternatives. Father worked with Paternal Grandmother to establish visits, but Mother denied visitation with Paternal Grandmother. Father testified that he gave up trying to request visitation and focused on trying to obtain visitation through the courts.

{¶27} The trial court next found that when Father filed a Motion to Establish Parenting Time on April 12, 2017, the motion was an effort by Father to legally contact his child. Father filed the motion within the one-year statutory period. After Father filed his motion, Mother changed her wedding date so that Petitioner could file his Petition for Adoption on May 23, 2017. The trial court observed the filing of the Petition as an example of Mother's interference with Father's relationship with the child.

{¶28} We agree with the trial court that both Father and Mother have good arguments to support their positions. Strictly construing the matter to protect the rights of the natural parent, however, we find the trial court's judgment is supported the by manifest weight of the evidence. The probate court properly considered events outside of the one-year period to determine whether those events had any bearing on Father's failure to communicate with the child. The circumstances of this case demonstrate there exists some competent and credible evidence to find Petitioner could not support his burden to show that Father had no justifiable cause for his failure to support or contact the child.

**CONCLUSION**

{¶29} Petitioner's sole Assignment of Error is overruled.

{¶30} The judgment of the Richland County Court of Common Pleas, Probate Division is affirmed.

By: Delaney, J.,

Wise, P.J. and

E. Wise, J., concur.