[Cite as *In re P.C.*, 2021-Ohio-4418.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                    |   | JUDGES:                       |
|--------------------|---|-------------------------------|
| IN RE: P.C.        | : | Hon. W. Scott Gwin, P.J.      |
|                    | : | Hon. William B. Hoffman, J.   |
|                    | : | Hon. John W. Wise, J.         |
|                    | : |                               |
|                    | : |                               |
|                    | : | Case No. 2021 CA 00087        |
|                    | : |                               |
|                    | : |                               |
|                    | : | OPINION                       |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Probate
                             Court, Case No. 239497

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      December 15, 2021

APPEARANCES:

For-Appellant                        For-Appellee

PAUL HERVEY                          EUGENE CAZANTZES
4700 Dressler Ave. N.W.              101 Central Plaza South, Ste. 1000
Canton, OH 44718                     Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant Biological Father appeals the July 19, 2021 judgment entry of the Stark County Probate Court, finding the consent of Biological Father is not required and granting the step-parent adoption petition of Appellee Step-Father.

*Facts and Procedural History*

{¶2} Appellee Step-Father filed for adoption of fourteen-year-old P.C. on March 26, 2021. The petition alleged that Appellant's consent to the adoption was not required because Appellant had failed to have contact with P.C. without justifiable cause for the past year. Appellant objected to the petition on April 12, 2021. On June 21, 2021, a hearing was held remotely (due to COVID) on the issue of whether Appellant's consent was required.

{¶3} S.F. is the natural mother of her fourteen-year-old son, P.C., whom she had with Appellant. S.F. and Appellant were never married. By 2008, S.F. had moved in with her parents and filed a complaint in Columbiana County Juvenile Court for child support, which was granted. S.F. is now married to Appellee Step-Father. P.C. is living with S.F. and Appellee Step-Father.

{¶4} Appellant moved in with his mother, T.C. ["Grandmother"] several years ago. Appellant never sought a custody or visitation order in the support case. Until 2019, Grandmother would coordinate visits with S.F. for Appellant to visit with P.C. S.F. and Appellant have had a strained relationship since at least 2015. As a result, S.F. has blocked Appellant's cell phone. (T. at 24; 35). S.F. testified that she has never blocked Grandmother from contacting her by telephone or text message. (T. at 25 -26; 30; 36-37).

S.F. testified that she believed P.C. had also blocked Father from communicating with him as well. (T. at 25).

{¶5}   In 2018, S.F. and Appellee Step-Father moved to a new residence with P.C. (T. at 17). Appellant was not given P.C.'s new address. S.F. testified that she gave Grandmother, but not the Appellant, her new address. (T. at 22). Grandmother denied knowing the address but did admit that she was aware of the move in the summer of 2018. (T. at 53-54).  Grandmother never asked P.C. or S.F. the new address. (T. at 54).

{¶6}   In 2019, a dispute arose over the name displayed on P.C.'s baseball jersey. The name on the jersey was the last name of Appellee Step-Father rather than the Appellant's last name. This resulted in Appellant confronting both P.C. and S.F. separately. (T. at 33-35). Following the argument, Mother refused to allow visitation between P.C. and Father without a court issuing a visitation order. (T. at 34-35). Grandmother testified that she encouraged Appellant to get an order to have visitation rights. (T. at 53).  Grandmother remained in contact with P.C. as recently as New Year's Eve 2020. (T. at 45).  Appellant conceded that he has had no contact with P.C. for one year prior to the filing of the petition to adopt. (T. at 6).

{¶7}   By Judgement Entry filed July 19, 2021, the trial court found that while S.F. refused to have contact with Appellant, Appellant had the ability to contact Appellee Step-Father directly to find P.C.'s new address. Appellant also knew what school P.C. attended, and where Appellee Step-Father worked. Further, Appellant was able to ascertain P.C.'s address within ten days of receiving the petition to request visitation after nearly two years without contact. The trial court further found,

Mother's refusal to allow visitation, however, does not constitute justifiable cause pursuant to R.C. 3107.07(A). To the contrary, it has previously been held that even a court order prohibiting visitation does not provide justifiable cause for not having contact under the statute. *See In re Adoption of T.U.,* 152 N.E.3d 943, ¶27 (6th Dist.), *citing In re Adoption of T.R.S.,* 7th Dist. Belmont No. 13 BE 43, 2014-Ohio-3808, ¶.20. ("While a 'no-contact' order can provide justifiable cause for a parent's failure to have more than de minimis contact with the child under R.C. 3107.07(A), a 'no-visitation' order does not provide justifiable cause."). Father did not pursue an order for visitation following the 2019 dispute. He simply stopped having any contact with [P.C.], which does not constitute justifiable cause for failure to meet the statutory obligation to provide more than de minimis contact.

*Judgment Entry*, filed July 19, 2021 at 3-4. The trial court concluded that Appellee Step-Father met his burden of proof in showing that Appellant failed to provide, without justifiable cause, more than de minimis contact with P.C. during the one-year period immediately preceding the filing of the Petition as prescribed by R.C. 3107.07(A). Therefore, the Court found that Appellant's consent to the Petition for the Adoption of P.C. was not required.

*Assignments of Error*

{¶8} Appellant raises two Assignments of Error,

{¶9} "I. THE TRIAL COURT ERRED IN APPLYING A BURDEN OF PROOF UPON THE NATURAL PARENT IN A CONTESTED ADOPTION CASE.

{¶10} "II. THE TRIAL COURT'S RULING THAT THE APPLICANT MET HIS BURDEN OF PROVING A LACK OF JUSTIFIABLE CAUSE FOR A PARENT'S LACK OF CONTACT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I & II.

{¶11} In his First Assignment of Error, Appellant argues he provided a facially justifiable reason for his failure to have contact with P.C., but the trial court found that he needed to do more despite case law to the contrary [Appellant's Brief at 4]. In his Second Assignment of Error, Appellant argues to the extent that the trial court properly placed the burden upon the Appellee Step Father to prove a lack of justifiable cause for a lack of contact between Appellant and P.C., such a decision was against the manifest weight of the evidence. [Appellant's Brief at 9].

### Standard of Appellate Review.

{¶12} In *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 366, 481 N.E.2d 613, 619(1985), the court focused on the failure to communicate portion of R.C. 3107.07. The court held as follows:

1. R.C. 3107.07(A) authorizes the adoption of a minor child without the consent of a parent who has failed without justifiable cause to communicate with that child for a period of at least one year immediately preceding the filing of the adoption petition.

2. Pursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent only if there is a complete absence of communication for the statutorily defined one-year period.

3. Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child. The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence.

4. The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication. (I*n re Adoption of McDermitt* [1980], 63 Ohio St.2d 301, 408 N.E.2d 680 modified.)

Id. at syllabus.

{¶13} In *Holcomb*, the Ohio Supreme Court, after noting that the term "justifiable cause" lacks a precise definition, declined to provide a precise definition. The court wrote as follows:

We do not believe that the legislature intended to give a precise and inflexible meaning to the term 'justifiable cause,' nor do we choose to adopt any such restricted definition now.

18 Ohio St.3d at 367, 481 N.E.2d 620. The court instead left to the probate court the question of whether justifiable cause for failure to communicate with the child exists in a particular case. The court reasoned that the probate courts are in "the best position to

observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony."

{¶14} The non-consenting natural parent is not required to prove that his failure to support or to communicate was justifiable. *Holcomb* at 368. However,

A natural parent may not simply remain mute while the petitioner is forced to demonstrate why the parent's failure to provide support is unjustifiable. Rather, once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence is on the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner.

*In re Adoption of Bovett,* 33 Ohio St.3d 102, 104, 515 N.E.2d 919(1987). The same standard applies to a parent's failure to communicate with the child during the requisite one-year period. *In re: E.E.B., nka E.E.H.* 5th Dist. Richland No. 17CA107, 2018-Ohio-1021, ¶23; *In re: K.M.R.,* 5th Dist. Muskingum No. CT2017-0049, 2018-Ohio-1265, ¶23; *In re: R.A.H.,* 2nd Dist. Champaign No. 2020-CA-32, 2021-Ohio-1667, ¶12.

{¶15} The Ohio Supreme Court articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012–Ohio–236, 963 N.E.2d 142. The first step involves the factual question of whether the petitioner has proven, by clear and convincing evidence, the natural parent failed to provide for the maintenance and support of the child or failed to have more than de minimis contact with the child. Id. "A trial court has discretion to make these

determinations, and, in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." Id. An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

{¶16} If a probate court finds a failure to have more than de minimis contact, the court proceeds to the second step of the analysis and determines whether justifiable cause for the failure has been proven by clear and convincing evidence. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012–Ohio–236, 963 N.E.2d 142

{¶17} *In State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60(1990), the court wrote that the standard of "clear and convincing evidence" is defined as:

> * * * that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond as reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

{¶18} A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). The underlying rationale for giving deference to the findings of the trial court rests with the

knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶19} Therefore, for the petitioner, Appellee Step-Father, to prevail in this adoption proceeding without Appellant's consent, he must prove by clear and convincing evidence that: (1) there has been a failure of communication by Appellant for the one-year period and (2) the failure is unjustified. If the petitioner meets his burden of proof, then the Appellant has the burden of going forward with evidence to show some justifiable cause for his failure to contact the child. However, the burden of proof never shifts from the petitioner. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987).

{¶20} The Supreme Court also has held that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Holcomb,* 18 Ohio St.3d at 361, 481 N.E.2d 620 at paragraph three of the syllabus. A probate court is not restricted to focusing solely on the one-year statutory period in making such a determination *In re: Adoption of Lauck,* 82 Ohio App.3d 348, 612 N.E.2d 459 (9th Dist. 1992); *In re: Adoption of B.T.R.,* 5th Dist. Morrow No. 2019CA0005, 2020-Ohio-2685, ¶23..

**ISSUES FOR APPELLATE REVIEW:** *Whether the record contains clear and convincing evidence that (1 )there has been a failure of communication by appellant for the one-year period and, if so,  (2) whether the failure was without justifiable cause.*

**The Trial Court's Properly Imposed the Burden of Proof Upon the Appellee Step-Father.**

1. *Failure of communication by Appellant for the one-year period immediately preceding the filing of the adoption petition.*

{¶21}  Appellant conceded that he has had no contact with P.C. for one year period prior to the filing of the petition to adopt. (T. at 6).

{¶22}  Accordingly, clear and convincing evidence supports the trial court's finding that Appellant had no contact with P.C. for one year prior to the filing of the petition to adopt.

*2. Was the failure without justifiable cause?*

{¶23}  Appellant initially argues that Appellee Step-Father failed to prove by clear and convincing evidence that there was no justifiable cause for the failure of communication. Appellant alleges significant interference by S.F. with communication between Appellant and P.C., or that S.F. significantly discouraged such communication. Further Appellant argues that he provided a "facially justifiable cause" for his failure to have contact with P.C. [Appellant's Brief at 7-8; 10].

{¶24}  After reviewing the trial court's findings of fact and weighing all the evidence and reasonable inferences, we believe that the trial court reasonably found, by clear and convincing evidence, that Father's failure to contact P.C. was without justifiable cause and that Appellant failed to demonstrate a "facially justifiable cause" for his failure to have contact with P.C. for over one year. The trial court found that S.F. refusing to allow visitation after the baseball jersey incident unless Appellant obtained a court order did not provide Appellant with justifiable cause for his failure to communicate.  We agree. In *In re*

*Adoption of T.U.*, 6th Dist. Williams No. WM-19-012, 2020-Ohio-841, 152 N.E.3d 943, the Court noted that the distinction between a *no-visitation* order and a *no-contact* order is important.

> A "no-visitation" order prevents a parent from having parenting time with the child, while a "no-contact" order prohibits all contact and communication with the child. While a "no-contact" order can provide justifiable cause for a parent's failure to have more than de minimis contact with the child under R.C. 3107.07(A), a "no-visitation" order does not provide justifiable cause. *In re Adoption of T.R.S.,* 7th Dist. Belmont No. 13 BE 43, 2014-Ohio-3808, ¶ 20. This is because "visitation does not equate with communication * * *." *In re Adoption of C.A.L.,* 2015-Ohio-2014, 35 N.E.3d 44, ¶ 30 (12th Dist.). That is, "a parent can communicate with a child 'notwithstanding the inability to physically visit with the child.' " Id., *quoting In re Adoptions of Doyle,* 11th Dist. Ashtabula Nos. 2003-A-0071 and 2003-A-0072, 2004-Ohio-4197, 2004 WL 1778821, ¶ 17.

2020-Ohio-841 at ¶ 27. In the case at bar, competent, credible evidence supports the trial court's finding that Appellant had other means by which he could have located P.C., contacted P.C., and attempted to establish a visitation schedule.

{¶25} S.F. and Appellant were never married. In 2008, a court in Columbiana County, Ohio issued a child support order.[1] The child support action did not establish formalized visitation between Appellant and P.C. Accordingly, in the case at bar there

---

[1] No judgment entries or any other document from the Columbiana County case were presented or admitted into evidence during the adoption hearing.

was no court-ordered visitation, or even a telephone-contact order, that was unilaterally violated.

{¶26} Visitation was dependent upon the parties. It is apparent to us from the record that Grandmother, not Appellant, was primarily involved in attempting to facilitate visits between Appellant and P.C.

{¶27} When S.F. moved in 2018, she was not hiding. Appellant testified that in 2018, he saw S.F.'s house was for sale. T. at 16-17. Appellant further testified that S.F. told him that she had gotten her parents' old house. T. at 16-17. S.F. and Appellee Step-Father testified that she, P.C. and Appellee Step-father moved into their present home in the summer of 2018. T. at 17; 59. Grandmother testified that S.F. told her about the move in the summer of 2018. T. at 53. Grandmother further testified that she did not ask S.F. for the new address. T. at 53-54.

{¶28} Appellant's visitation with P.C. continued after the move in 2018 up to the baseball jersey incident in October, 2019. T. at 2; 5. The record contains no evidence that S.F. or Appellee Step-father prevented or hindered Appellant or Grandmother from asking P.C. where he was living during their visits with P.C. from the time of the move in the summer of 2018 until the baseball jersey incident in October, 2019. Grandmother remained in contact with P.C. through text messaging up to December 2020. (T. at 45).

{¶29} S.F. testified, and Appellant agreed, that S.F. had blocked Appellant from calling her cell phone off and on beginning around 2015. T. at 2; 24. The parties therefore relied primarily upon Grandmother to communicate concerning P.C. Appellant testified that he had Appellee Step-Father's telephone number. T. at 8. Appellant testified that he only attempted to call Appellee Step-Father one time in 2019. T. at 8. Appellee Step-

Father testified that he never blocked Appellant from calling. T. at 58. Grandmother remained in contact with P.C. by text messaging as recently as New Year's Eve 2020. (T. at 45).

{¶30} P.C. has attended school in the same school system throughout his entire life. T. at 18. Appellant has not attended any school or sporting event involving P.C. since May 2019. T. at 11-12. Appellant was aware that Appellee Step-Father was employed by the same school system. T. at 59-60.

{¶31} The evidence does not show that S.F. or Appellee Step-Father significantly interfered with communication between the Appellant and P.C., or significantly discouraged such communication Here, the trial court obviously chose to believe the testimony of S.F. and Appellee Step-Father. As noted above, the trial court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 614 N.E.2d 748 (1993). From the testimony and the evidence presented, the trial court could conclude Appellant's failure to maintain more than de minimis contact with P.C. was not justified.

## Standard of Appellate Review- Manifest Weight

{¶32} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.*, 1st Dist. Hamilton No. C110611, 2012–Ohio–2490, ¶ 16. The Ohio Supreme Court held the standard of review for manifest weight of

the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley*, at ¶ 17–19, 972 N.E.2d 517. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley,* at ¶ 20 *quoting Twearson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton,* 5th Dist. Stark No .2011 CA00262, 2012–Ohio–3549 *citing State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, at ¶ 19.

{¶33} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the findings of fact. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Easterly,* at ¶ 21, *citing Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**Issue for Appellate Review**:  *Whether the judge clearly lost her way and created such a manifest miscarriage of justice that the judgement must be reversed.*

{¶34}  The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render a decision against the manifest weight or sufficiency of the evidence."  *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996).  Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶35}  As we have outlined above, the record contains competent, credible evidence to clearly and convincingly support the trial judge's decision. Therefore, we find that this is not an "'exceptional case in which the evidence weighs heavily against" the finding that Appellant's failure to communicate for the one-year period was not justifiable. *See*, *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997).  The judge neither lost her way nor created a miscarriage of justice in finding that Appellant's failure to communicate for the one-year period was not justifiable

{¶36}  Based upon the foregoing and the entire record in this matter we find the judge's finding that Appellant's failure to communicate for the one-year period was not justifiable and is not against the manifest weight of the evidence.  To the contrary, the

judge appears to have fairly and impartially decided that matter.  The judge heard the witnesses, evaluated the evidence, and was convinced that Appellant's failure to communicate for the one-year period was not justifiable.

{¶37}  Appellant's First and Second Assignments of Error are overruled.

{¶38}  The Judgment of the Stark County Probate Court is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Wise, John, concur